UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| QIANA HANKINS,<br><br>                                  Plaintiff,<br><br>   v.<br><br>HELEN JACQUELINE SWISKEY and J T TAI & CO. INC.,<br><br>                                  Defendants. | Civil Action No. 23-cv-1309<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Qiana Hankins, by her attorneys, for her complaint against Defendants Helen Jacqueline Swiskey and J T Tai & Co. Inc. ("J T Tai," together "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1. This is a civil rights action seeking damages and injunctive relief for Defendants' unlawful, discriminatory treatment of Ms. Hankins based on her lawful source of income and disability, in violation of her rights under the Fair Housing Act, 42 U.S.C. § 3604 ("FHA"); New York Human Rights Law, N.Y. Exec. Law § 290 ("NYSHRL"); and New York City Human Rights Law, New York City Administrative Code § 8-107 ("NYCHRL").

2. In early 2021, while attempting to find an apartment to rent in Manhattan, Ms. Hankins was subjected to overt discrimination on the basis of her source of income and disability. Defendant Swiskey, a real estate broker, and the owner and manager of the relevant building, Defendant J T Tai, engaged in deliberate actions to deny Ms. Hankins an opportunity to rent an apartment due to her federal Section 8 housing assistance voucher and her disability.

3. Almost immediately upon learning of Ms. Hankins's desire to rent an apartment from Defendant J T Tai, Defendant Swiskey made it clear that Defendant J T Tai did not want to rent to a disabled, Section 8 housing voucher recipient. When Ms. Hankins persisted in trying to

1

rent an apartment, Defendants attempted to steer[1] her to a different building and gave pretextual reasons why the building would not be suitable for her, including because of her disability.

4. Federal, State, and local law prohibit discrimination against prospective renters on the basis of a disability. The FHA makes it illegal to make statements with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on a disability. 42 U.S.C. § 3604(c). The FHA further makes it illegal to discriminate in renting, or to otherwise make unavailable or deny a dwelling to any renter, because of a perceived disability of that renter. *Id.* at § 3604(f). New York State and New York City law contain similar restrictions. *See* NYSHRL § 296(5); NYCHRL § 8-107(5).

5. Further, State and local law in New York prohibit discrimination against any person or group of persons by virtue of their lawful source of income. *See* NYSHRL § 296(5); NYCHRL § 8-107(5). New York State and City laws specifically define "source of income" as including Section 8 assistance vouchers. *See* NYSHRL § 292(36); NYCHRL § 8-102. These laws broadly prohibit discrimination against Section 8 recipients, making it illegal for real estate brokers to (1) refuse to rent any housing accommodation; (2) refuse to negotiate; (3) otherwise deny or withhold any housing; or (4) make any statement that expresses, directly or indirectly, any limitation, specification, or discrimination as to lawful source of income. *See* NYSHRL § 296(5); NYCHRL Code § 8-107(5).

6. This case concerns a real estate agent that engaged in blatant source of income and disability discrimination against Ms. Hankins in violation of Federal, State, and local laws.

7. Ms. Hankins received a federal Section 8 voucher in January of 2020.

---

[1] Steering is the practice of directing members of certain protected groups to buildings or neighborhoods occupied primarily by members of these protected groups and/or away from buildings and neighborhoods inhabited primarily by members of other groups.

8. Ms. Hankins has keratoconus, a disease affecting the cornea of the eyes that causes decreased visual acuity, intermittent blur, and dry eyes. Ms. Hankins was diagnosed with keratoconus in 2003. As a result of her condition, Ms. Hankins wears special contact lenses.

9. Ms. Hankins's ability to see without her contact lenses is very limited. Glasses do not mitigate the symptoms of her eye condition, and Ms. Hankins is substantially limited in certain life activities when she is not able to wear contact lenses. It is not possible for Ms. Hankins to wear her contact lenses at all times, especially at night.

10. Ms. Hankins has submitted information to the relevant municipal authorities to alert the police and fire departments that, in case of an emergency, she is disabled.

11. As the pandemic subsided, Ms. Hankins expected to be able to find a suitable apartment within her price range. Ms. Hankins maintained stable employment and had a government-backed housing voucher guaranteeing the majority of the rent. Any landlord should have considered Ms. Hankins a highly attractive tenant.

12. Ms. Hankins turned to a real-estate agent—Nancy Hite-Norde—to assist with her rental search. Ms. Hite-Norde helped Ms. Hankins locate a suitable apartment at 246 E. 46th St., New York, NY 10017 ("the Property") in Manhattan.

13. At that time, the Property was owned and managed by Defendant J T Tai.

14. After seeing an online advertisement, Ms. Hankins decided to inquire about an available unit.

15. At all relevant times, Defendant Swiskey was acting as the agent for Defendant J T Tai in renting units in the building.

16. Ms. Hite-Norde reached out to Defendant Swiskey to arrange a viewing of the apartment and spoke with her briefly.

17. During a follow-up call, Defendant Swiskey told Ms. Hite-Norde explicitly that the Defendant J T Tai was unlikely to rent to Ms. Hankins because she was using a Section 8 voucher.

18. Despite being told that she was not welcome at the Property, Ms. Hankins asked Ms. Hite-Norde to continue trying to set up appointments to view units in the building. Defendant Swiskey kept coming up with excuses about why she could not show certain units, including suggesting that Ms. Hankins's disability might make it hard to access certain units, and prevented Ms. Hankins from pursuing a rental unit further.

19. Discouraged, Ms. Hankins eventually gave up and found a potential apartment option in a different building. Because of her experience with Defendant Swiskey, Ms. Hite-Norde reached out directly to an attorney who worked for the new building and was able to quickly find Ms. Hankins an available unit and facilitate a new lease agreement.

20. Ms. Hankins's experience of facing discrimination throughout her search for housing, particularly by Defendant Swiskey and Defendant J T Tai, caused emotional and economic harm to Ms. Hankins, and forced her to settle for an apartment that did not meet all of her search criteria.

21. Because she was experiencing discrimination, in the midst of her housing search, Ms. Hankins contacted the Fair Housing Justice Center ("FHJC") to seek assistance. FHJC conducted discrimination "testing" at the Property.

22. The results of this FHJC testing at the Property revealed that Defendant Swiskey treated disabled, Section 8 voucher applicants much differently than she treated those who did not receive this form of assistance and who were not disabled, including by asking more questions of and offering limited units to the disabled, Section 8 voucher applicants.

23. Through this lawsuit, Ms. Hankins seeks to remedy the injustices she suffered and recover compensatory and punitive damages. She also seeks an injunction preventing Defendants from continuing to engage in unlawful, discriminatory rental practices.

## **JURISDICTION AND VENUE**

24. This Court has subject matter jurisdiction over Ms. Hankins's claims pursuant to 28 U.S.C. §§ 1331 and 1343.

25. This Court also has supplemental jurisdiction over Ms. Hankins's State-law claims pursuant to 28 U.S.C. § 1367.

26. Venue is proper in this district pursuant to 28 U.S.C. § 1391, in that a substantial part of the events or omissions giving rise to Ms. Hankins's claims occurred in this judicial district.

## **PARTIES**

27. Ms. Hankins is a life-long New York resident who currently resides in Manhattan.

28. Defendant J T Tai is a New York corporation with its principal place of business at 18 E. 67th Street, New York, NY 10065. At all relevant times, Defendant J T Tai owned and managed an apartment building located at 246 E. 46th St., New York, NY 10017. On information and belief, Defendant J T Tai continues to own and/or manage apartment buildings in New York City.

29. Defendant Swiskey holds a New York real estate broker license with license number 35SW0448730. At all relevant times, Defendant Swiskey was the agent, co-venturer, and/or employee of Defendant J T Tai & Co. and, in engaging in the conduct described, was acting within the course and scope of such agency, co-venture, and/or employment. On information and belief, Defendant Swiskey continues to work as a real estate broker in New York City.

## STATUTORY AND REGULATORY FRAMEWORK: SECTION 8 VOUCHER PROGRAM

30. Created by the Housing and Community Development Act of 1978, the Housing Choice Voucher program, also known as "Section 8," provides assistance to eligible low-and moderate-income families to rent housing in the private market.[2] Eligibility for this program is based on an individual's gross annual income. *Id.* The program provides a rental subsidy that allows individuals to pay a reasonable amount of their income toward their rent. *Id.*

31. Section 8 vouchers permit tenants to apply for housing where the rent amount is within pre-defined "payment standards," which are determined by the local public housing agencies in accordance with fair market rents published by the U.S. Department of Housing and Urban Development ("HUD"). 24 CFR § 982.503(a)(1). Once a tenant identifies an apartment with an asking price that meets the payment standards and certain other criteria, the local housing authority enters into a Housing Assistance Payment contract with the owner of that apartment. *See generally id.* at §§ 982.1(a)(2), 982.515.

## FACTUAL ALLEGATIONS

### A. Ms. Hankins's Background

32. Ms. Hankins was born and raised in New York City. She currently works in Queens at the Center for Independence of the Disabled, a non-profit organization. She has obtained four academic degrees or certificates, most recently a Master's degree from John Jay College of Criminal Justice.

---

[2] NYC.gov, "*About Section 8*," http://www.nyc.gov/site/nycha/section-8/about-section-8.page#:~:text=The%20program%20works%20as%20a,income%20toward%20their%20rent%20share (last accessed Feb. 15, 2023).

33. For many years, Ms. Hankins has struggled to find adequate housing in New York City. Before receiving her Section 8 voucher, Ms. Hankins found herself unable to find a permanent residence and spent time living in pay-by-night hotels and women's shelters.

34. Ms. Hankins has keratoconus, which is a disease of the cornea of the eyes that causes decreased visual acuity, intermittent blur, and dry eyes. When Ms. Hankins is unable to wear corrective contact lenses, which she is not always able to do, she is substantially limited in certain major life activities.

35. On January 28, 2020, HUD issued Ms. Hankins a Section 8 Housing Choice Voucher for which she had applied two months earlier.

**B.     Difficulty Finding An Apartment in 2021**

36. Just as Ms. Hankins began to search for an apartment in 2020, the COVID-19 pandemic struck. Due to the uncertainty stemming from the pandemic and because Ms. Hankins's Master's degree classes and work transitioned online, Ms. Hankins left New York. She stayed with relatives in North Carolina until March 2021, when she resumed her housing search in New York.

37. Ms. Hankins focused her search on the Midtown neighborhood of Manhattan due to the proximity to John Jay College (where she was taking classes) and her office in Queens. Midtown is also closer to Ms. Hankins's friends and healthcare providers, and Ms. Hankins believed it to be a relatively safe area.

38. Ms. Hankins's Section 8 voucher gave her hope that she could finally afford adequate housing. Additionally, during her search for an apartment, she discovered that many apartment buildings offered steep discounts.

39.     However, despite her qualifications and a rental payment partially guaranteed by the federal government, Ms. Hankins faced extraordinary difficulties signing a lease for a new apartment.

**C.     Discrimination at 246 East 46th Street (the "Property")**

40.     Frustrated by her experience, Ms. Hankins confided in an acquaintance she knew through work, Nancy Hite-Norde, who was a real estate broker. Ms. Hite-Norde has experience assisting Section 8 voucher holders and agreed to help Ms. Hankins continue her search for adequate housing.

41.     On or about March 28, 2021 Ms. Hankins and/or Ms. Hite-Norde inquired about apartment 6J at the Property. Defendant Swiskey was the broker responsible for this listing and advertised the apartment on StreetEasy for a net effective rent[3] of $1,950.

42.     The Property was owned and managed at all relevant times by Defendant J T Tai. Defendant Swiskey acted as an agent for Defendant J T Tai in renting units at the Property, and Defendant Swiskey interacted with Ms. Hankins in that capacity.

43.     On information and belief, Defendant J T Tai had control over Defendant Swiskey's efforts to rent units at the Property, and Defendant J T Tai gave Defendant Swiskey specific instructions about rental preferences.

44.     Defendant J T Tai, either directly or through its representatives, communicated with Defendant Swiskey about pricing and renter qualifications for the units available in the building.

---

[3] Advertising the "net effective" rent is a way that landlords and brokers highlight that they are offering one or multiple months of a lease for free. The net effective rent incorporates the savings from the free months into the advertised monthly rent price, even though the renter is responsible for paying the gross price for whatever months are not free.

45. Defendant J T Tai, either directly or through its representatives, instructed Defendant Swiskey to rent only to tenants that make their income solely from employment.

46. Defendant J T Tai, either directly or through its representatives, instructed Defendant Swiskey to not rent to tenants who presented a Section 8 voucher or who were disabled.

47. Defendant J T Tai was aware at all relevant times that Defendant Swiskey was carrying out its rental preferences and offering apartments only to renters who were not disabled and/or did not have Section 8 vouchers.

48. On or around March 28, 2021, Ms. Hite-Norde spoke over the phone to Defendant Swiskey on behalf of Ms. Hankins. This initial call concerned setting up a time for Ms. Hankins to view an apartment at the Property.

49. Shortly thereafter, in a follow-up conversation with Defendant Swiskey about viewing an apartment at the Property, Ms. Hite-Norde divulged that Ms. Hankins would be using a Section 8 voucher to assist with rental payments.

50. Over the course of that subsequent phone call, Defendant Swiskey asked why Ms. Hankins had a Section 8 voucher, if she was employed, and whether she was disabled. Ms. Hite-Norde stated to Defendant Swiskey that Ms. Hankins had a vision impairment and was "practically blind." She also conveyed that Ms. Hankins was employed and had an annual salary.

51. By virtue of Ms. Hite-Norde's statement to Defendant Swiskey that Ms. Hankins is "practically blind," Defendant Swiskey regarded Ms. Hankins as having a disability.

52. After being given this information, Defendant Swiskey flatly told Ms. Hite-Norde that she and the landlord would not accept a tenant with a Section 8 voucher and that the landlord wanted a tenant with cash on hand.

53. Notwithstanding Defendant Swiskey's comment, Ms. Hite Norde continued to try to arrange a viewing, speaking to Defendant Swiskey further over the course of the next few days.

54. Defendant Swiskey failed to show Ms. Hankins a single apartment at the Property.

55. Over the course of Ms. Hite-Norde's conversations with Defendant Swiskey, Defendant Swiskey stalled and made various representations as to why the apartment was unfit for viewing or why it was unfit for Ms. Hankins to live in.

56. First, Defendant Swiskey stated that the landlord was worried that Ms. Hankins would not be able to afford the rent if it were increased post-pandemic.

57. Second, Defendant Swiskey stated that Ms. Hankins's disability would make it difficult for her to navigate the building, including a step up to one of the apartments they were discussing.

58. Third, Defendant Swiskey stated that the neighbors in a nearby apartment were noisy.

59. Fourth, Defendant Swiskey stated that the elevator in the building did not always work, which was meant to suggest accessibility issues for Ms. Hankins due to her disability.

60. Fifth, Defendant Swiskey reiterated that Defendant J T Tai did not want to rent to someone with a voucher but instead wanted someone using income from employment to pay rent who had cash on hand.

61. Defendant Swiskey and her employer, Defendant J T Tai, violated Federal, New York State, and New York City discrimination laws by refusing to rent to Ms. Hankins on the basis of her Section 8 voucher and disability, by steering her away from the building, and by making statements indicating a preference for non-disabled renters and individuals who did not participate in the Section 8 program.

### D. Ms. Hankins's Housing Search Comes to an Unsatisfactory End

62. After these events, Ms. Hite-Norde continued to work with Ms. Hankins until she found adequate housing. On July 16, 2021, with assistance from her Section 8 voucher, Ms. Hankins signed a lease for an apartment at 41 W. 86th St., New York, NY 10024 at a monthly rent of $2,113.

63. While Ms. Hankins lived in that building, it was in disrepair and had unresolved rodent infestations.

64. Over a year later, Ms. Hankins is still negatively affected by memories of these events. During her housing search, Ms. Hankins felt humiliated, anxious, and overwhelmed to the point of exhaustion. When she is forced to look for housing in the future, she is anxious that she will be forced to go through all of this again.

### E. FHJC Testing at the Property

65. FHJC is a nonprofit civil rights organization dedicated to eliminating housing discrimination; promoting policies that foster open, accessible, and inclusive communities; and strengthening enforcement of fair housing laws. FHJC provides resources and education on fair housing laws to the public, offers counseling and assistance to low-income clients, conducts investigations into allegations of housing discrimination, and makes legal referrals and provides training to cooperating attorneys.

66. FHJC employs individuals as "testers" who pose as renters or homebuyers for the purpose of obtaining information about the conduct of landlords, real estate companies, brokers, agents, and others to determine whether illegal housing discrimination is taking place.

67. During the course of her housing search, Ms. Hankins related the troubles she faced at the Property to FHJC. FHJC conducted an investigation using testers for the purpose of detecting whether a pattern of illegal discrimination was discernible.

11

68. FHJC provides training to testers that generally includes instructions on conducting tests, preparing tester report forms, and using concealed digital audio recorders during tests. When the FHJC testers called Defendant Swiskey regarding the Property, they collected substantial evidence of discrimination on the basis of lawful source of income and disability. All of the conversations and audio messages described below were captured via digital audio recording.

69. FHJC carefully simulated an identical scenario to what Ms. Hankins described to them by assigning two testers: one posing as a Section 8 recipient with a disability ("Section 8/Disabled Tester"), the second posing as a non-disabled renter with income solely from employment ("Other Tester").

70. Defendant Swiskey treated the Section 8/Disabled Tester much differently than she treated the Other Tester.

71. On Monday, April 19, 2021, the Section 8/Disabled Tester called Defendant Swiskey to inquire about apartment 3R at the Property.

72. After Defendant Swiskey inquired about the Section 8/Disabled Tester's ideal price range, the Section 8/Disabled Tester volunteered that she would be using a Section 8 voucher. After learning this, Defendant Swiskey asked the Section 8/Disabled Tester: "how much do you make… your salary?" Defendant Swiskey never asked this question of the Other Tester.

73. After learning the Section 8/Disabled Tester's salary, Defendant Swiskey stated: "See, I don't think this particular landlord would do this because he wants people to make 40 times the rent."

74. Defendant Swiskey then followed up: "how did you get the voucher? Are you disabled or…?" The Section 8/Disabled Tester responded that she did have a disability.

75. Defendant Swiskey also asked other questions to the Section 8/Disabled Tester about the voucher: "How long is the voucher good for? Do they renew it every year?"

76. As the call was concluding, Defendant Swiskey stated that she needed to talk to the landlord about a potential application from the Section 8/Disabled Tester, but she noted that the landlord was out of the office that day. Defendant Swiskey promised to call back in the next day or after speaking with the landlord.

77. Two days after this phone call on April 21, 2021, before Defendant Swiskey had gotten back to the Section 8/Disabled Tester about her conversation with the landlord, the Other Tester called Defendant Swiskey to inquire about a different apartment (Apartment 3S) in the same building.

78. Defendant Swiskey did not ask the Other Tester about her yearly salary, whether she had a disability, or any other details regarding her income.

79. In a call that lasted significantly longer than the call with the Section 8/Disabled Tester, Defendant Swiskey provided numerous details about the apartment and explained the details of the application process.

80. Defendant Swiskey also asked the Other Tester multiple questions, such as "what sort of lease were you looking for?", which Defendant Swiskey did not ask the Section 8/Disabled Tester.

81. Ultimately, Defendant Swiskey offered the Other Tester with income from employment a chance to view the apartment that the Other Tester inquired about. Defendant Swiskey never offered the Section 8/Disabled Tester an opportunity to view the apartment the Section 8/Disabled Tester had inquired about.

82. Unprompted, Defendant Swiskey also suggested that the Other Tester consider Apartment 3R, which the Section 8/Disabled Tester had inquired about and which she was still waiting for a return phone call about. Defendant Swiskey did not offer any other available apartments in the building to the Section 8/Disabled Tester.

83. After her call with the Other Tester on April 21, 2021, Defendant Swiskey sent a follow-up text that same day to the Section 8/Disabled Tester: "I spoke to the landlord and the landlord feels income too low. I know another broker who could help u find a place. Her name is Nancy norwald . . . I told her u would call her."

84. The FHJC testing procedure demonstrates that Defendant Swiskey and Defendant JT Tai treat disabled, Section 8 voucher applicants worse than they treat prospective renters without those attributes.

## FIRST CAUSE OF ACTION
### (Fair Housing Act, 42 U.S.C. § 3604(c) & (f))

85. Ms. Hankins realleges and incorporates by reference the allegations in paragraphs 1 through 84 as set forth herein.

86. Ms. Hankins is disabled and/or was regarded as disabled by Defendant Swiskey within the meaning of the Fair Housing Act, 42 U.S.C. §3602(h).

87. Defendants' acts constituted a refusal to rent housing and/or otherwise making housing unavailable on the basis of disability in violation of 42 U.S.C. § 3604(f)(1).

88. An ordinary listener could understand Defendant Swiskey's statements to Ms. Hankins's agent as an expression of preference on the basis of disability and/or an expression of discrimination on that basis in violation of 42 U.S.C. § 3604(c).

89. Defendants intentionally and successfully steered Ms. Hankins away from the Property on the basis of disability in violation of the FHA.

90. These violations have caused Ms. Hankins injury, severe and lasting embarrassment, anguish, humiliation, loss of civil rights, a loss of opportunity to live in her desired location, and other damages and expenses. Ms. Hankins is entitled to compensatory damages in a sum to be determined at trial.

91. Defendants' conduct was willful, intentional, and in reckless disregard of Ms. Hankins's rights, and Ms. Hankins is thus entitled to an award of punitive damages in a sum to be determined at trial.

92. Defendant J T Tai was, at all relevant times, the owner and/or managing agent of the Property and was the principal/employer of Defendant Swiskey when she engaged in the acts of discrimination alleged. Defendant Swiskey was working within the scope of her agency when she engaged in discrimination. Thus, Defendant J T Tai is vicariously liable for any and all of Defendant Swiskey's discriminatory acts.

**SECOND CAUSE OF ACTION**
**(New York City Human Rights Law, N.Y.C. Admin. Code § 8-107)**

93. Ms. Hankins realleges and incorporates by reference the allegations in paragraphs 1 through 84 as set forth herein.

94. Defendants' treatment of Ms. Hankins was intentionally discriminatory on the basis of Ms. Hankins's income and disability, in violation of the NYCHRL.

95. Defendants' actions to prevent Ms. Hankins from touring or renting an apartment at the Property and Defendant Swiskey's refusal to negotiate for an apartment on the basis of Ms. Hankins's disability and lawful source of income violated the NYCHRL.

96. Defendant Swiskey made statements indicating a preference for non-disabled and non-Section-8 renters in violation of the NYCHRL.

97. Defendants intentionally and successfully steered Ms. Hankins away from the Property in violation of the NYCHRL.

98. Defendant J T Tai & Co. was, at all relevant times, the owner and/or managing agent of the Property and was the principal/employer of Defendant Swiskey when she engaged in the acts of discrimination herein alleged. Defendant Swiskey was working within the scope of her agency when she engaged in discrimination. Thus, Defendant J T Tai is vicariously liable for any and all of Defendant Swiskey's discriminatory acts.

99. Defendants' actions have caused Ms. Hankins injury, severe and lasting embarrassment, anguish, humiliation, loss of civil rights, a loss of opportunity to live in her desired location, and other damages and expenses. Ms. Hankins is entitled to injunctive relief in addition to compensatory damages in a sum to be determined at trial.

100. Defendants' conduct was willful, intentional, and in reckless disregard of Ms. Hankins's rights, and Ms. Hankins is thus entitled to an award of punitive damages in a sum to be determined at trial.

## THIRD CAUSE OF ACTION
### (New York Human Rights Law, N.Y. Exec. Law § 290)

101. Ms. Hankins realleges and incorporates by reference the allegations in paragraphs 1 through 84 as set forth herein.

102. Defendants' treatment of Ms. Hankins was intentionally discriminatory on the basis of Ms. Hankins's income and disability, in violation of the NYSHRL.

103. Defendants' actions to prevent Ms. Hankins from touring or renting an apartment at the Property and Defendant Swiskey's refusal to negotiate for an apartment on the basis of Ms. Hankins's disability and lawful source of income violated the NYSHRL.

104. Defendant Swiskey made statements indicating a preference for non-disabled and non-Section-8 renters, in violation of the NYSHRL.

105. Defendants intentionally and successfully steered Ms. Hankins away from the Property in violation of the NYSHRL.

106. Defendants' actions have caused Ms. Hankins injury, severe and lasting embarrassment, anguish, humiliation, loss of civil rights, a loss of opportunity to live in her desired location, and other damages and expenses. Ms. Hankins is entitled to injunctive relief in addition to compensatory damages in a sum to be determined at trial.

107. Defendants' conduct was willful, intentional, and in reckless disregard of Ms. Hankins's rights, and Ms. Hankins is thus entitled to an award of punitive damages in an amount to be determined at trial.

108. Defendant J T Tai & Co. was, at all relevant times, the owner and/or managing agent of the Property and was the principal/employer of Defendant Swiskey when she engaged in the acts of discrimination herein alleged. Defendant Swiskey was working within the scope of her agency when she engaged in discrimination. Thus, Defendant J T Tai is vicariously liable for any and all of Defendant Swiskey's discriminatory acts.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff requests the following relief:

109. That the Court declare Defendant Swiskey's discriminatory practices to violate the Fair Housing Act and New York State and City Human Rights Laws.

110. That the Court declare Defendant J T Tai is vicariously liable for the discriminatory conduct of Defendant Swiskey.

111. That the Court issue an injunction pursuant to 42 U.S.C. § 3613(c)(1), N.Y.C. Admin. Code § 8-122, and N.Y. Exec. Law § 297(6) against Defendants Swiskey and J T Tai; their

agents, employees, and successors; and all others in active concert or participation with Defendants J T Tai and Swiskey prohibiting all future acts of discrimination and implementing any and all appropriate measures to prevent such discrimination.

112. That the Court order Defendants to pay to Ms. Hankins compensatory and /or punitive damages, according to proof at trial.

113. That the Court order Defendants to pay Ms. Hankins's reasonable attorneys' fees and costs incurred in prosecuting this action.

114. That the Court order such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Ms. Hankins demands trial by jury in this action of all issues so triable.

Dated: New York, New York
       February 15, 2023

LATHAM & WATKINS LLP

By: /s/ Kegan A. Brown
    Kegan A. Brown
    Zachary N. Zaharoff
    Natalie M. Pita
    Tyler M. Halloran

    1271 Avenue of the Americas
    New York, New York 10020
    (212) 906-1200
    kegan.brown@lw.com
    zack.zaharoff@lw.com
    natalie.pita@lw.com
    tyler.halloran@lw.com

    *Attorneys for Plaintiff Qiana Hankins*